# UNITED STATES DISTRICT COURT

EASTERN    DISTRICT OF    CALIFORNIA

—oOo—

**FILED**

APR 1 8 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES OF AMERICA
V.
LONNIE CHARLES DENISON

## CRIMINAL COMPLAINT

CASE NUMBER: 2:07-MJ-0122 DAD

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **April 15, 2006** in **Sacramento** County, in the Eastern District of California defendant(s) did, (Track Statutory Language of Offense)

▸ **knowingly and willfully damage or attempt to damage the property of an energy facility in an amount that exceeds or would if the attempted offense had been completed have exceeded $5000**

in violation of Title **18**, United States Code, Section(s) **1366**. I further state that I am a(n) Officer with the California Highway Patrol, assigned to the Federal Bureau of Investigation Joint Terrorism Task Force (JTTF), and that this complaint is based on the following facts:

▸ **See Attachment**

X  Continued on the attached sheet and made a part hereof.

Signature of Complainant MATTHEW ST. AMANT
Task Force Officer
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence

April 16, 2007                                at    Sacramento, California

Date                                                City and State

Dale A. Drozd
United States Magistrate Judge

Name and Title of Judicial Officer                  Signature of Judicial Officer

**AFFIDAVIT IN SUPPORT OF COMPLAINT**

I, Matthew St. Amant, California Highway Patrol (CHP) Officer assigned to the Federal Bureau of Investigation's Joint Terrorism Task Force ("FBI/JTTF"), having been duly sworn, do depose and state the following:

**I.     EXPERIENCE OF AFFIANT AND SUMMARY OF REQUEST**

I have been an Officer with the CHP since October 1998 and have been assigned to the JTTF since November 2004. I have been assigned to the Domestic Terrorism squad for the Sacramento Division since my arrival in November 2004, and have investigated primarily those matters involving environmental terrorism.

Based on my personal participation in this investigation, discussions with other investigating agents and other law enforcement agencies, and interviews with reliable witnesses, I am familiar with the facts and circumstances of this investigation. The information set forth in this Affidavit reflects my personal knowledge or has been provided to me by other law enforcement officers, investigative analysts, and agents with whom I have spoken, or whose reports I have reviewed. As this Affidavit is submitted for the limited purpose of demonstrating probable cause to support a complaint, I have not included in this Affidavit all information known to me related to this investigation.

I believe probable cause exists to support a complaint charging Lonnie Charles Denison with violating Title 18 USC, section 1366(b) - Destruction of an energy facility. This

statute states, "Whoever knowingly and willfully damages or attempts to damage the property of an energy facility in an amount that in fact exceeds or would if the attempted offense had been completed have exceeded $5,000 shall be punishable by a fine under this title, or imprisonment for not more than five years, or both."

**II.   OVERVIEW OF THE INVESTIGATION AND SUBJECT**

On April 16, 2007, Supervisory Special Agent (SSA) Thomas Osborne responded to the California Independent Systems Operator (CAL-ISO), a not-for-profit public benefit corporation charged with operating the majority of California's high voltage, wholesale power grid, located at a building at 151 Blue Ravine, Folsom CA 95630. Pursuant to Title 18 USC, 1366(c), CAL-ISO meets the definition of an "energy facility" which is defined as "a facility that is involved in the production, storage, transmission, or distribution of electricity."  Set forth below is the information from the following CAL-ISO employees:

<u>Hector Alvarez, Head of Security for CAL-ISO</u> reported the following information:

Alvarez, the head of CAL-ISO security, advised SSA Osborne of an incident that occurred on April 15, 2007 at approximately 11:23 p.m.  Alvarez advised that an "Emergency Power Off" button, located within the "Outer Data Center", was activated.  Alvarez reviewed CAL-ISO's security system access logs and video surveillance and discovered a contract employee, Lonnie Denison, date of birth October 22, 1974, accessed the CAL-ISO facility on April 15, 2007 at

approximately 11:15 pm. Further analysis of these logs shows Denison accessed the following areas:

    4/15/2007   11:15:14 p.m. "Lobby Exterior"
    4/15/2007   11:15:20 p.m. "Lobby Interior"
    4/15/2007   11:15:23 p.m. "150 North" (Denison work area)
    4/15/2007   11:21:06 p.m. "IBM/MCI Room"
    4/15/2007   11:23:03 p.m. "126 to 128" (Outer Data Center)

The logs listed above show Denison entered the CAL-ISO facility at 11:15:14 p.m. via the lobby exterior door, then accessed the lobby interior door at 11:15:20 p.m. Denison then entered "150 North." According to Alvarez, "150 North" is Denison's work area. At 11:21:06 p.m., Denison accessed the "IBM/MCI" room, followed by his access at 11:23:03 p.m. of "126 to 128". According to Alvarez, "126 to 128" is the "Outer data center" where the "Emergency Power Off" button is located.

Alvarez stated Denison had access to the "IBM/MCI" room via a card access device. While in this room, Denison made brief contact with another contract employee, Bill Witt, cellular phone (916) 284-2200. Shortly thereafter, Denison exited the "IBM/MCI" room and walked directly across the hallway to the "Outer Data Center." Denison accessed the "Outer Data Center" via a biometric hand reader. Shortly after Denison accessed this data center, the "Emergency Power Off" button was activated. Denison's actions were absent of any justification nor were warranted by an emergency condition from CAL-ISO supervisory personnel.

Alvarez conducted a detailed review of the CAL-ISO access

logs, including the video surveillance system, for the "Outer Data Center." Alvarez's analysis shows no other person entered or was present in the "Outer Data Center" besides Denison when the "Emergency Power Off" button was activated. The "Emergency Power Off" is encased in glass. A small hammer is next to it. The glass must be broken to press the button. The button cannot be activated through incidental contact or an accident.

Alvarez advised that when the "Emergency Power Off" button was activated, it caused the majority of the Data Center to lose power. In effect, this action prevented CAL-ISO from controlling computer applications which are used to communicate to the energy market. Alvarez advised that Jim McIntosh, (916) 351-2101, is the Director of Grid Operations and would be able to provide additional information regarding the effects of this power outage.

<u>Jim McIntosh, CAL-ISP Director of Grid Operations</u>, supplied the following information:

McIntosh is the Director of Grid Operations for CAL-ISO. In this capacity, he manages the distribution of electricity for CAL-ISO. McIntosh was advised of the "Emergency Power Off" situation from another CAL-ISO employee. McIntosh said that when the "Emergency Power Off" button was activated, it caused the majority of the computer systems within the "Outer Data Center" to lose power. McIntosh advised the computer systems within the "Outer Data Center" control computer applications which are used to "talk/communicate" to the electricity market. McIntosh advised the "electricity market"

4

consists of power generating facilities that work together to ensure electricity needs are met for the western United States.

McIntosh advised that this disruption prevented CAL-ISO from communicating to the market for approximately two hours, thus leaving the electrical power grid vulnerable to shortages. McIntosh advised the effects of this power shortage could have been far more devastating; however, due to the time at which the power outage occurred, no blackouts occurred. McIntosh advised that if this deliberate shut off had occurred in the morning of April 16, 2007, the results would have been far more severe. CAL-ISO would have incurred additional labor costs to restore the systems back into operations during the hours of peak demand for electricity. Additionally, electric consumers in the Western United States would have experienced disruption in their electrical supply.

McIntosh advised that when he was notified of the power outage, CAL-ISO immediately enacted their contingency procedures. McIntosh advised CAL-ISO began to telephonically contact power generators to advise them of the situation and handle electricity loads manually.

<u>Matthew Turner, CAL-ISO Information Technology Technician</u>, supplied the following information:

After becoming aware of the "Emergency Power Off" button activation, Turner was requested to review computer access logs for contract employee, Lonnie Denison. Turner's review of system logs reveal that on April 15, 2007 at approximately 09:00 p.m., Denison attempted to logon remotely to the CAL-ISO

5

1  computer system.  Further review conducted by Turner shows
2  Denison attempted to logon to CAL-ISO systems at least two
3  different times while physically on site at the CAL-ISO
4  facility in Folsom, California.
5      Turner advised that Denison is a contract employee for
6  CAL-ISO.  Denison was a Unix system operator for CAL-ISO and
7  had complete access to CAL-ISO's network until sometime last
8  week.  In his capacity as a system operator, Denison had full
9  knowledge of the effect of pushing the "Emergency Shut Off"
10 button.  Denison's security access was suspended at the
11 request of his employer based on an employee dispute.
12     Turner provided a listing of all computer systems
13 affected by the power outage which occurred on April 15, 2007
14 at approximately 11:23 p.m.  Turner added that it took 20
15 computer specialists approximately seven (7) hours to restore
16 the "Outer Data Center" systems.  Turner advised the average
17 hourly rate for these IT specialist is $100/hr.  The total
18 approximate direct costs for the "Emergency Power Off" was
19 $14,000.00.
20 **III.    SELECTED EVENTS SUPPORTING PROBABLE CAUSE**
21     I submit that the following events support a finding of
22 probable cause to believe that **Lonnie Charles Denison** is in
23 violation of Title 18 USC, Section 1366(b).
24     A.  Observations of Surveillance cameras:
25     On April 15, 2007, Lonnie Charles Denison was observed on
26 CAL-ISO surveillance cameras entering the exterior, interior,
27 and other restricted interior rooms of CAL-ISO, including the
28 room housing the "Emergency Power Off" button.

B. <u>CAL-ISO Access Logs:</u>

On April 16, 2007, Denison's individual security access code was used to access the exterior and interior of the CAL-ISO. The following are the pertinent dates, times, and locations of when/where Denison's access code was used:

4/15/2007   11:15:14 p.m.   "Lobby Exterior"

4/15/2007   11:15:20 p.m.   "Lobby Interior"

4/15/2007   11:15:23 p.m.   "150 North" (Denison work area)

4/15/2007   11:21:06 p.m.   "IBM/MCI Room"

4/15/2007   11:23:03 p.m.   "126 to 128" (Outer Data center)

C. <u>Witnesses:</u>

Contract employee Bill Witt observed Denison in the immediate vicinity of the "Emergency Power Off" button when it was activated.

**IV. CONCLUSION**

Based on the facts set forth in this Affidavit, I contend that probable cause exists to charge Lonnie Charles Denison with destruction of an energy facility in violation of Title 18 U.S.C. § 1366(b).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

_____
Matthew St. Amant
Task Force Officer
Federal Bureau of Investigation

Read and approved as to form

_____
KYLE REARDON
Assistant U.S. Attorney

Subscribed and sworn to before me this 16th day of April, 2007

_____
HONORABLE DALE A. DROZD
United States Magistrate Judge

8